UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

RONELL NICHOLS,
        Plaintiff,

v.

No. 2:17-cv-02604

DOCTOR RONALD PHILLIPS;
DOCTOR BOB RAWLINS;
KRISTEN GRATY;
MARIO COLUCCI;
THE GEO GROUP, INC.;
WARDEN DAVID BYRNE;
SERGEANT SABINTINO; and
SUPERINTENDENT JOHN REILLY,
        Defendants.

## **O P I N I O N**

**Defendants' Motion to Dismiss, ECF No. 9–Granted in Part and Denied in Part**

**Joseph F. Leeson, Jr.**          **December 29, 2017**
**United States District Judge**

    Plaintiff Ronell Nichols is a pro se inmate who suffers pain from a surgically-implanted femur rod and bullet fragments embedded in his thigh. In this § 1983 case, the second he has filed as a result of his condition, he claims that two prison physicians violated his constitutional rights when they chose to give him pain medication instead of surgically removing the bullet and femur rod. He also claims that a prison guard who was a defendant in the first lawsuit retaliated against him by repeated searches of his cell that culminated in verbal abuse and the guard throwing Nichols's personal property in the cell's toilet. Nichols also brings claims against various prison administrators and the entity that operates the prison for failing to respond to his grievances and properly train prison employees. Defendants move to dismiss all claims.

Because Nichols's claim against the physician defendants expresses only his disagreement with their chosen treatment method, he alleges, at best, medical negligence, and has not stated a constitutional claim. However, Nichols has alleged that he suffered an adverse action because of his prior lawsuit, so Defendants' motion to dismiss the retaliation claim against the prison guard is denied. Because Nichols has not alleged that any of the prison administrators were personally involved in the alleged violations of his rights and has not alleged any policy or custom of unconstitutional conduct, this Court dismisses the failure to train claims against the administrative defendants.

I. BACKGROUND

A. Procedural Background

On June 30, 2017, Nichols filed a pro se complaint under 42 U.S.C. § 1983 alleging violations of his constitutional rights. ECF No. 6. He brings claims of negligence, retaliation, and deliberate indifference and alleges that Defendants Dr. Ronald Phillips and Dr. Bob Rawlins acted with deliberate indifference to his medical needs, that Defendant Sergeant Sabintino denied him grievance forms, yelled at him, repeatedly searched his cell, and threw his personal property in the toilet, and that Defendants Superintendent John Reilly, Warden David Byrne, Deputy Warden Mario Collucci, and Nurse Administrator Kristen Grady[1] failed to remedy the wrongs he suffered and respond to his grievances,.

Defendants moved to dismiss the complaint on August 28, 2017. ECF No. 9. On October 2, 2017, Nichols filed a "Motion to Dismiss Defendants' Motion to Dismiss," ECF No. 13, which the Court construes as an opposition. In his opposition, Nichols clarifies that he brings a

---

[1] Grady is mistakenly identified as "Graty" in the Compliant. Defs.' Mot. Dismiss 5.

claim against Defendants Reilly, Byrne, Colucci, Grady, and the GEO Group, Inc., which operates the prison, based on failure to train, supervise, and discipline prison employees. Pl.'s Opp. Mot. Dismiss 4.

**B. Factual Background**

Plaintiff Ronell Nichols, while incarcerated at George W. Hill Correctional Facility, presented to two prison doctors, Defendant Dr. Phillips and Defendant Dr. Rawlins, complaining of pain in his leg caused by embedded bullet fragments and a surgically-implanted femur rod. Compl. 1, 4. Nichols alleges that the bullet is "moving throughout my thigh area" and the femur rod "is poking out my hip bone area," causing pain so severe that he cannot sleep on his right side. Compl. 4.

Nichols had been scheduled for surgery to remove the femur rod on March 1, 2017, but was arrested on February 27, 2017. Compl. 13. On March 13, after examining Nichols, Dr. Rawlins concluded that the rod had not healed completely, even though prior to Nichols's incarceration, his orthopedist had said it had healed completely and was ready to be removed. Compl. 13. Dr. Phillips and Dr. Rawlins did not examine x-ray films that had been taken of Nichols's thigh on March 9. Compl. 13. Dr. Phillips felt the fragment in Nichols's thigh and said he would have the bullet surgically removed, but Dr. Rawlins convinced him not to. Compl. 12-13. The doctors provided Nichols with Advil for four days. Compl. 12.

Nichols filed a previous lawsuit in 2015 against Defendant Byrne, Defendant Sabintino, and another prison official. Compl. 7. This lawsuit settled in January 2017. Compl. 8. Subsequently, Sabintino searched Nichols's cell every time Sabintino was on Nichols's cell block, made threats related to Nichols's lawsuit, and made other harassing comments, such as

calling Nichols a "suing little bastard." Pl.'s Opp. Mot. Dismiss 9.[2] He refused Nichols grievance forms and, on one occasion in particular, searched Nichols's cell for his legal paperwork, cursed at him, and threw Nichols's "towel-n-rag" in the cell's toilet. Compl. 4. Nichols had to hide his legal materials in his cellmate's belongings so that Sabintino would not find them. Pl.'s Opp. Mot. Dismiss 9.

Nichols wrote numerous grievances, including to Defendant Reilly, Defendant Byrne, Defendant Colucci, and Defendant Grady, but did not receive any response. Compl. 12. He has not received mail, although his family informs him that they have sent it. Compl. 12.

## II. STANDARD OF REVIEW

In rendering a decision on a motion to dismiss for failure to state a claim, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). However, "the tenet that a court must accept as true all of the allegations contained

---

[2] Although Nichols alleges these facts in his opposition and not in his complaint, this Court considers them in light of the liberal review accorded to pro se pleadings. *See Gutierrez v. Peters*, 111 F.3d 1364, 1367 n. 2 (7th Cir. 1997) ("As our decisions make clear, facts alleged in a brief in opposition to a motion to dismiss as well as factual allegations contained in other court filings of a pro se plaintiff may be considered when evaluating the sufficiency of a complaint so long as they are consistent with the allegations of the complaint."); *Sarpolis v. Tereshko*, 26 F. Supp. 3d 407, 419 (E.D. Pa. 2014), *aff'd*, 625 F. App'x 594 (3d Cir. 2016) (construing pro se complaint as alleging cause of action alleged in opposition to motion to dismiss).

in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

III. ANALYSIS

A. Eighth Amendment Deliberate Indifference

Nichols claims that his treating physicians were deliberately indifferent to his medical needs because they gave him pain medication instead of surgically removing the rod and bullet fragments in his leg. To state a § 1983 claim based on deliberate indifference, a plaintiff must allege (1) that he had a serious medical need and (2) acts or omissions of prison officials showing deliberate indifference to that need. *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). "Deliberate indifference" requires highly culpable conduct—although prison systems have a duty to provide prisoners with adequate medical care, simple medical malpractice does not create a constitutional violation. *Estelle v. Gamble,* 429 U.S. 97, 104-106 (1976); *see also Monmouth County Correctional Institution Inmates v. Lanzaro,* 834 F.2d 326, 346 (3d Cir. 1987). Indeed, prison authorities have considerable latitude in the diagnosis and treatment of prisoners, and courts defer to a physician's professional judgment. *See Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir. 1979); *see also White v. Napoleon,* 897 F.2d 103, 110 (3d Cir. 1990) ("Certainly, no claim is presented when a *doctor* disagrees with the professional judgment of another doctor. There may, for example, be several ways to treat an illness."). Thus, a plaintiff does not state a deliberate indifference claim

by alleging merely "an error in medical judgment." *Parrish v. Corizon Health, Inc.*, No. CV 15-01813, 2016 WL 4123937, at *3 (E.D. Pa. Aug. 3, 2016) (citing *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993)).

If, however, a plaintiff alleges a deliberate failure to provide adequate care, particularly a failure "motivated by non-medical factors," he has alleged deliberate indifference. *Id.* Put differently, defendants act with deliberate indifference when they disregard a known excessive risk to a plaintiff's health. *Baez v. Stine*, 260 F. App'x 494, 497 (3d Cir. 2008) (citing *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)).

Assuming that Nichols's condition qualifies as a "serious medical need," he cannot prevail on his claim, because he alleges only negligence, not deliberate indifference. His complaint reveals that Nichols disagreed with the course of treatment the doctors chose, not that they ignored a serious medical need. Therefore, this Court dismisses his claim against the physicians. Because Nichols was under the care of the prison doctors, he cannot claim that prison officials were deliberately indifferent because they did not second-guess the doctors' decisions, and thus this Court dismisses his claim against the non-physician defendants as well.

1. **Physician Defendants**

Nichols alleges that he suffers substantial pain from the metal rod and bullet fragments embedded in his right leg, to the extent that he cannot sleep on his right leg at night. He complains that Dr. Phillips and Dr. Rawlins only gave him Advil for four days instead of having the rod and bullet fragments surgically removed, and argues that this treatment plan was deliberately indifferent to his medical needs. However, Nichols does not allege a plausible claim that Dr. Phillips and Dr. Rawlins intentionally refused to provide medical care in disregard of a substantial risk to Nichols's health or safety, or denied reasonable requests for medical treatment.

On the contrary, the defendant doctors did treat him for his complaints. Nichols simply disagrees with their professional medical opinions.

Nichols's claim with respect to the bullet fragments is weakened by the alleged disagreement between Dr. Phillips and Dr. Rawlins about the proper course of treatment: once they examined Nichols and found the bullet, Dr. Phillips told Nichols he would remove it, but Dr. Rawlins "convice[d] him not to." Compl. 12. The doctors' decision not to remove the bullet fragments and instead to provide Nichols with pain medication does not establish deliberate indifference—the Third Circuit Court of Appeals has made quite clear that a prisoner's disagreement with a treating physician's care, or a difference of opinion between physicians, does not typically give rise to a § 1983 cause of action. *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993); *see also Oliver v. Pennsylvania Dep't of Corr.*, No. CIV.A. 13-5321, 2014 WL 80725, at *6 (E.D. Pa. Jan. 8, 2014) (dismissing deliberate indifference claim where doctors prescribed physical therapy and pain and anti-inflammatory medications instead of surgery and plaintiff disagreed).

Against the doctors' conclusion that providing pain medication instead of surgery was adequate treatment, Nichols offers only his own conclusion that Dr. Phillips and Dr. Rawlins knew the "substantial risk of serious harm, like the bullet moving hitting a nerve, or coming out by itself and my wound getting affected [sic]." Pl.'s Opp. Mot. Dismiss 8. By concluding that these complications were possible and that surgery was necessary, Nichols substitutes his own medical judgment for that of Dr. Phillips and Dr. Rawlins. This Court will not do the same. *See Coudriet v. Vardaro*, 545 F. App'x 99, 104 (3d Cir. 2013) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which

7
122917

sound in state tort law.") (quoting *U.S. ex rel. Walker v. Fayette Cnty., Pa.*, 599 F.2d 573, 575 n. 2 (3d Cir. 1979)).

Nor will this Court second-guess the doctors' decision about Nichols's femur rod. Nichols's complaint reveals that Dr. Phillips and Dr. Rawlins perceived a medical reason not to remove it. Nichols asserts that he and Dr. Rawlins discussed surgical removal of the rod, but Dr. Rawlins said that it had not healed completely. Compl. 13. Nichols protests that the orthopedist he had seen prior to his incarceration had concluded that the rod had fully healed and was ready for removal, but once again, he alleges only a difference in medical opinion between physicians, not deliberate indifference. *See Glatts v. Lockett*, No. CIV.A. 09-29, 2011 WL 772917, at *8 (W.D. Pa. Feb. 28, 2011) (holding that plaintiff did not establish deliberate indifference when prison doctor halved dose of pain medication and did not arrange for surgery when plaintiff developed leg paralysis even though previous physician said surgery would be required).

Nichols received medical care from Dr. Phillips and Dr. Rawlins, which generally forecloses a deliberate indifference claim. *See Clark v. Doe*, 2000 WL 1522855, at *2 (E.D. Pa. Oct. 13, 2000) ("[C]ourts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care."). He complains only that the level of care he received did not adequately control his pain. Thus he alleges, at most, that Dr. Phillips and Dr. Rawlins provided negligent or inadequate medical care—not that they knew he needed medical care and intentionally refused to provide it or delayed necessary medical care for non-medical reasons, as required to state a claim for deliberate indifference. *See Baez v. Stine*, 260 F. App'x 494, 497 (3d Cir. 2008) (holding that plaintiff could not state deliberate indifference claim although he still experienced pain and was dissatisfied with physician's chosen treatment); *Sims v. Wexford Health Sources*, No. CA 14-108, 2015 WL 4041771, at *8 (W.D. Pa. July 1, 2015), *aff'd*, 635 F.

App'x 16 (3d Cir. 2015) (granting motion to dismiss where plaintiff with bullet lodged in his spine and metal rods holding his elbow together was taken off his Oxycodone prescription and given non-narcotic pain medicine, which he found inadequate); *Young v. Stefanic*, No. 10-CV-3449, 2011 WL 3359717, at *4 (E.D. Pa. Aug. 3, 2011) (granting motion to dismiss deliberate indifference claim premised on plaintiff and second physician's preference for more aggressive treatment than defendant prescribed). *Cf. Parrish v. Corizon Health, Inc.*, No. CV 15-01813, 2016 WL 4123937, at *3 (E.D. Pa. Aug. 3, 2016) (finding that plaintiff had stated deliberate indifference claim where prison physicians did not provide him medicine in a timely fashion, arrange for follow up appointments with eye specialists, or adhere to treatment plans the specialists put in place to treat plaintiff's glaucoma, causing him advanced loss of vision); *Rodriguez v. Smmith*, No. CIV.A.03-3675, 2005 WL 1484591, at *5 (E.D. Pa. June 21, 2005) (denying motion to dismiss deliberate indifference claim alleging that defendants knew that plaintiff was suffering serious pain as a result of a brain tumor in 2001, but refused to treat him with anything more than Tylenol until 2003).

Accordingly, the motion to dismiss Nichols's deliberate indifference claim is granted with respect to Dr. Phillips and Dr. Rawlins.

### 2. Non-Physician Defendants

Nichols attempts to state a claim against Defendants Colucci, Byrne, Sabintino, Grady, and Reilly for deliberate indifference to his medical needs. However, as discussed above, Nichols has not alleged that he was treated with deliberate indifference. Even if he could state a claim against the physician defendants, non-physician prison officials cannot be deliberately indifferent for failing to intervene in medical treatment unless they have actual knowledge that prison medical personnel are mistreating, or failing to treat, a prisoner. *See Glatts*, N2011 WL

772917, at *9 ("The general rule is that where a prisoner is being treated by medical personnel, non-physician prison officials cannot be deliberately indifferent for failing to intervene in the medical treatment.") (citing *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993); *Spruill v. Gillis,* 372 F.3d 218, 236 (3d Cir. 2004) (holding that, absent a reason to believe that prison doctors or their assistants are mistreating or not treating a prisoner, non-medical prison official not liable for deliberate indifference). The remaining defendants are non-physicians,[3] and Nichols does not allege that any had a reason to believe that the prison doctors were mistreating him or not treating him at all. Accordingly, the deliberate indifference claim is dismissed against the remaining defendants.[4]

B. Retaliation

1. Claim Against Sabintino

Nichols also alleges that Sabintino retaliated against him for his exercise of First Amendment rights through the 2015 lawsuit. To prevail on a retaliation claim, a plaintiff must prove that: (1) he engaged in constitutionally protected activity, (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) his protected conduct was a substantial or motivating factor in the decision to discipline him. *Gannaway v. Prime Care Med., Inc.*, 150 F. Supp. 3d 511, 552 (E.D. Pa. 2015), *aff'd sub*

---

[3] Defendants describe Kristen Grady as the "Health Care Administrator." Defs.' Mot. Dismiss 6. Nichols describes her as the "Nurse Administrator," Pl.'s Opp. Mot. Dismiss 4. There are no allegations that Grady is a registered nurse or other medical professional, but even if she is, Nichols cannot state a claim against her: as explained above in the discussion of disagreements between physicians, Nichols cannot base a deliberate indifference claim on the contention that Grady should have substituted her own medical judgment for another professional's.

[4] As a result, this Court need not reach the issue of whether the general release and settlement agreement from the previous lawsuit precludes Nichols's deliberate indifference claims.

*nom. Gannaway v. PrimeCare Med., Inc.*, 652 F. App'x 91 (3d Cir. 2016) (citing *Rauser v. Horn*, 241 F.3d 330, 333–34 (3d Cir. 2001)). Once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the burden shifts to prison officials, who "may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest," a "deferential standard" meant to take into account "that the task of prison administration is difficult, and that courts should afford deference to decisions made by prison official, who possess the necessary expertise." *Id.* (internal quotations omitted). Because prisoner retaliation claims are easily fabricated, courts must view them with skepticism. *Morales v. Berks Cty. Prison*, No. CIV.A. 10-5117, 2011 WL 2746077, at *4 (E.D. Pa. July 14, 2011). Nevertheless, this Court finds that Nichols has stated a retaliation claim against Sabintino that can survive a motion to dismiss.[5]

Nichols alleges that he filed a previous § 1983 lawsuit against Sabintino, as well as grievances within the prison system, which are constitutionally protected activities. *Booth v. King*, 346 F. Supp. 2d 751, 762 (E.D. Pa. 2004) (citing cases holding that lawsuits and grievances are protected activities). Nichols alleges that in retaliation for these activities, Sabintino subjected Nichols to various adverse actions: Sabintino searched Nichols's cell every time he was on Nichols's cell block, threatened Nichols about suing him, made "crazy comments," and refused to give Nichols grievance forms. Pl.'s Opp. Mot. Dismiss 9. On one occasion, Sabintino went through Nichols's cell looking for his legal paperwork, which Nichols

---

[5] Because this Court considers neither the settlement agreement attached to Defendants' motion to dismiss nor the declaration attached to Nichols's opposition at this time, the Court declines to convert Defendants' motion to dismiss into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d).

had concealed among his cellmate's personal mail. In the process, Sabintino cursed at Nichols and threw his "towel-n-rag" in the toilet. Compl. 4.

Defendants state correctly that the failure to provide grievance forms is not an actionable constitutional violation. *See Heleva v. Kramer*, 214 F. App'x 244, 247 (3d Cir. 2007) ("Prisoners do not have a constitutional right to prison grievance procedures."). Defendants dismiss the cursing and throwing items in the toilet as mere harassment. This Court disagrees. Although verbal harassment alone does not state a constitutional deprivation, *see, e.g.*, *Murray v. Woodburn*, 809 F. Supp. 383, 384 (E.D. Pa. 1993), verbal harassment or threats, with some "reinforcing act accompanying them" may establish an adverse action. *See Lewis v. Wetzel*, 153 F. Supp. 3d 678, 698–99 (M.D. Pa. 2015). A retaliatory search and seizure may satisfy the adverse action element of a retaliation claim if the search and seizure would deter a person of "ordinary firmness" from the protected activity. *Humphrey v. Sec'y Pennsylvania Dep't of Corr.*, No. 15-3250, 2017 WL 4736687, at *2 (3d Cir. Oct. 20, 2017) (citing *Bell v. Johnson*, 308 F.3d 594, 604 (6th Cir. 2002)). *See also Hernandez-Tirado v. Lowe*, No. 3:CV-14-1897, 2017 WL 3433690, at *10 (M.D. Pa. Aug. 10, 2017) (cell search motivated solely by retaliatory motive satisfies adverse action element); *Jordan v. Bertolini*, No. 1:15-CV-313, 2017 WL 835560, at *4 (W.D. Pa. Feb. 10, 2017), *report and recommendation adopted*, No. 1:15-CV-313 (BJR), 2017 WL 835204 (W.D. Pa. Mar. 2, 2017) (holding that cell searches and resulting confiscation of property satisfy adverse action element when motivated by retaliatory means); *Flynn v. Dep't of Corr.*, No. 3:CV-12-1535, 2015 WL 434997, at *7 (M.D. Pa. Feb. 3, 2015) (holding that searches resulting from "calculated harassment unrelated to prison needs" are adverse actions and finding possible retaliation claim where legal materials confiscated).

Nichols alleges that Sabintino would search his cell every time Sabintino was on the cell block. Repeated searches can be an adverse action for purposes of a retaliation claim. *See Scher v. Engelke,* 943 F.2d 921 (8th Cir. 1991) (finding that alleged repeated searches of prisoner's cell in retaliation for assisting in reporting prison corruption stated constitutional claim); *Mattis v. Dohman*, No. CIV.A.05-465, 2007 WL 1314891, at *3 (E.D. Pa. May 4, 2007) (noting that repeated searches of plaintiff's cell and confiscation of his musical equipment might qualify as adverse actions). The repeated searches culminated in the specific instance Nichols mentions, when Sabintino searched for legal materials, which Nichols had hidden to keep safe, and threw Nichols' personal property in the toilet. These actions are not mere harassment, but would deter a person of "ordinary firmness" from the protected activity. *See Starr v. Dube*, No. CIV. 05-264-SM, 2007 WL 4320743, at *6 (D.N.H. Dec. 7, 2007), *aff'd*, 334 F. App'x 341 (1st Cir. 2009) (concluding that reasonable jury could conclude that search was retaliatory where guard ransacked plaintiff's cell for library materials and threw a law book into the cell's toilet). Nichols has satisfied the adverse action element of his retaliation claim.

Nichols has also alleged a sufficient link between the adverse action and his protected conduct. Nichols alleges direct evidence to establish that his lawsuit and grievances were a substantial factor motivating Sabintino's actions. Sabintino was a defendant in Nichols's previous lawsuit, and Nichols alleges that Sabintino would call him "you suing little bastard" and make similar comments. Reading Nichols's allegations in the light most favorable to him, these facts establish the third element of Nichols's retaliation claim against Sabintino. Accordingly, this Court finds that Nichols has stated a retaliation claim against Sabintino and denies Defendants' motion to dismiss with respect to this claim.

## 2. General Release

Defendants move in the alternative for summary judgment on the ground that a release signed by Nichols in his previous lawsuit against Sabintino and other prison officials bars his present claims and attach the General Release and Settlement Agreement to their Motion. For a court ruling on a motion to dismiss to consider matters outside the pleadings, it must treat the motion as seeking summary judgment under Rule 56. Fed. R. Civ. P. 12(d). The court has the discretion to decline to consider matters outside the pleadings. *See Kulwicki v. Dawson,* 969 F.2d 1454, 1462 (3d Cir. 1992) (stating that the decision to consider evidence outside the complaint and convert a motion to dismiss into one for summary judgment is generally committed to the court's discretion). Courts generally decline to convert a motion to dismiss into a summary judgment motion when there has been little or no discovery. *Brennan v. Nat'l Tel. Directory Corp.*, 850 F. Supp. 331, 335 (E.D. Pa. 1994).

Defendants offer the settlement agreement to show that Nichols "released and waived all claims…based upon the same previous injury and circumstances" as his prior lawsuit. Defs.' Mot. Dismiss 23. This Court observes that Nichols's present claims against Sabintino result, not from the injuries underlying the previous lawsuit, but from Sabintino's conduct after and in response to the previous lawsuit. Regardless, to this Court's knowledge, the parties have not conducted significant discovery in this matter. Therefore, this Court declines to consider the settlement agreement at this time and declines to rule on Defendants' motion for summary judgment. *See Shipman v. Talley*, 629 F. App'x 199, 201 (3d Cir. 2015) (affirming district court that declined to consider settlement agreement attached to motion to dismiss until motion for judgment on the pleadings at later stage in litigation).

### C. Withholding of Mail

Nichols's Complaint also contains vague allegations that prison officials have withheld his mail: he mentions that he has not received mail even though his family tells him they sent it, *see* Compl. 12, and cites a case in the retaliation section of his opposition for the proposition that a prison violates a prisoner's constitutional rights by opening and reading attorney-client mail. *See* Pl.'s Opp. Mot. Dismiss 10. However, Nichols provides no additional allegations: he does not suggest that any defendant played a role in withholding his mail from him, or even that mail was withheld. He states only that he has not received it. Such speculation does not state a constitutional claim. *See Flynn v. Dep't of Corr.*, No. 3:CV-12-1535, 2015 WL 434997, at *4 (M.D. Pa. Feb. 3, 2015) (granting motion to dismiss where plaintiff provided only general assertions that prison officials withheld or rejected his mail).

### D. Failure to Respond to Grievances/Intervene

Nichols also brings claims against various members of the prison administration, alleging that they failed to respond to his grievances.[6] He contends that Reilly, Byrne, Colucci, and Graty are liable because they were in a position to remedy the wrongs he suffered, but did not do so and ignored his grievances. Compl. 10.

However, Nichols cannot state a claim based on their failure to respond to his grievances because a prison official's refusal to entertain a grievance "does not in itself give rise to a constitutional claim." *Williams v. Corizon*, No. 12-CV-02412, 2013 WL 4787223, at *19 (E.D. Pa. Sept. 9, 2013) (quoting *Winn v. Dep't of Corr.*, 340 F. App'x 757, 759 (3d Cir. 2009)). *See also Rauso v. Vaughn*, No. CIV. A. 96–6977, 2000 WL 873285, at *16 (E.D. Pa. June 26, 2000)

---

[6] The pleadings do not make clear whether the grievances Nichols mentions addressed his medical treatment or Sabintino's conduct. Regardless, he can prevail on neither basis.

("However, the rule is that the failure of a prison official to act favorably on an inmate's grievance is not itself a constitutional violation." (internal quotations omitted)). Lastly, to the extent Nichols premises his claims against the administrative defendants on their supervisory status, he has failed to state a claim because he does not allege that any of the defendants was personally involved in violations of his rights. *See Horan v. Wetzel*, No. 1:CV-13-0140, 2014 WL 631520, at *7 (M.D. Pa. Feb. 18, 2014) ("An allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to section 1983 liability."). Nichols has thus failed to state a claim against the remaining administrative defendants, and the claims are dismissed.

### E. Policy/Custom and Failure to Train Claims Against GEO

Nichols makes no factual allegations about GEO's involvement in his Complaint, but alleges a "failure to train, supervise, and discipline their officer's [sic] and doctor's [sic]." Pl.'s Opp. Mot. Dismiss 4. When a government entity contracts with a private entity for correctional services, both entities are liable under §1983 if an institutional policy or custom causes a violation of a plaintiff's constitutional rights. *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (policy or custom required to establish § 1983 liability of government agency); *Andrews v. Camden County,* 95 F. Supp. 2d 217, 228 (D.N.J. 2000) (government entity that contracts for prison health services is still responsible for constitutional violations); *McCullum v. City of Phila.,* Civ. A. No. 98-5858, 1999 WL 493696, at *2 (E.D. Pa. July 13, 1999) (private contractors who run prisons act under color of state law for purposes of § 1983). The municipality or contractor's failure to train rises to the level of policy or custom when that "failure amounts to 'deliberate indifference to the [constitutional] rights of persons with whom the police come in contact." *Woloszyn v. Cty. of Lawrence*, 396 F.3d 314, 324 (3d Cir. 2005)

16
122917

(quoting *Colburn v. Upper Darby Township*, 946 F.2d 1017, 1028 (3d Cir. 1991)). To show deliberate indifference, a plaintiff must allege that (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights. *See Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999).

Nichols has not satisfied this standard. He alleges only unconstitutional conduct by several individual defendants, without examples of similar past conduct that would suggest a policy or custom on the part of GEO. Nor does he allege how GEO's training of its employees was deficient so as to lead to either the doctors' decision not to perform surgery or Sabintino's retaliatory conduct. *See Woloszyn*, 396 F.3d at 314 (finding that plaintiff could not recover on failure to train theory when she did not identify what specific type of training would have alerted correction officers to fact that detainee was suicidal, as required to support § 1983 and wrongful death claim against county). Nichols has failed to state any claim against GEO, and this Court grants the motion to dismiss all claims against GEO.

## IV. CONCLUSION

For the reasons explained above, Defendants' motion to dismiss is granted in part and denied in part. This Court declines to rule on Defendants' alternative motion for summary judgment. A separate Order shall issue.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Court